**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**DUSAN PLAVSIC**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**LEGACY PROFESSIONALS LLP,**

Defendant.

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff, Dusan Plavsic ("Plaintiff"), by and through undersigned counsel, brings this Class Action Complaint ("Complaint") against Defendant, Legacy Professionals LLP ("Legacy" or "Defendant"), as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, and upon information and belief and his counsel's investigation as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff seeks injunctive and declaratory relief arising from Defendant's failure to safeguard the names and Social Security numbers, ("Personally Identifiable Information" or "PII")[1] of Plaintiff and Class Members, which resulted in unauthorized access to its information systems in or around April 2024, and the compromised and unauthorized disclosure of that PII,

[1] The Federal Trade Commission ("FTC") defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendant, not every type of information included in that definition was compromised in the subject data breach.

causing widespread injury and damages to Plaintiff and the proposed Class (defined below) members.

2. Defendant, Legacy Professionals LLP is a full-service accounting firm that provides professional services to individuals, corporations, not-for-profit organizations, labor unions and their related employee benefit plans throughout the country. Defendant's principle place of business in Westchester, Illinois. [2]

3. As explained in detail herein, in or around April 2024, Legacy detected unusual activity in its computer systems and ultimately determined that an unauthorized third party accessed its network and obtained certain files from its systems in or around April 2024. ("Data Breach").[3]

4. As a result of the Data Breach, which Defendant failed to prevent, the PII of Plaintiff and the proposed Class members, were stolen, including their names and Social Security numbers.[4]

5. Defendant's investigation concluded that the PII compromised in the Data Breach included Plaintiff's and other individuals' information (together, "the Class").

6. Defendant's failure to safeguard Plaintiff and Class members' highly sensitive PII as exposed and unauthorizedly disclosed in the Data Breach violates its common law duty, Illinois law, and Defendant's implied contract with Plaintiff and Class members to safeguard their PII.

7. Plaintiff and Class members now face a lifetime risk of identity theft due to the nature of the information lost, which they cannot change, and which cannot be made private again.

8. Defendant's harmful conduct has injured Plaintiff and Class members in multiple

[2] https://www.legacycpas.com/about-us (last accessed March 13, 2025)
[3] Notice of Security Incident, attached hereto as **Exhibit A**.
[4] *Id.*

ways, including: (i) the lost or diminished value of their PII; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive PII.

9. Defendant's failure to protect Plaintiff and Class members' PII has harmed and will continue to harm individuals that receive third-party services from Defendant, causing Plaintiff to seek relief on a Class wide basis.

10. On behalf of himself and the Class preliminarily defined below, Plaintiff brings causes of action against Defendant for negligence, negligence *per se*, breach of fiduciary duty, and breach of implied contract, resulting from Defendant's failure to adequately protect their highly sensitive PII.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, an individual resident and citizen of the State of Ohio.

12. Plaintiff received third-party services from Defendant. As a condition of receiving these services, Defendant required Plaintiff to provide them with his PII.

13. Defendant Legacy Professionals LLP is a Delaware limited liability partnership with its headquarters and principle place of business in Westchester, Illinois.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant, including Plaintiff. The exact number of members of the proposed Class is

unknown to Plaintiff, but upon information and belief, is more than 100. 28 U.S.C. § 1332(d)(5)(B).

15. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

***Defendant Legacy Professionals LLP's Business***

17. Legacy Professionals LLP is a full-service accounting firm that provides professional services to individuals, corporations, not-for-profit organizations, labor unions and their related employee benefit plans throughout the country. [5]

18. Plaintiff and Class members provided their PII to Defendant.

19. To receive third-party services from Defendant, Plaintiff and Class members, were required to provide sensitive and confidential PII, including their names, dates of birth, and other sensitive information, that would be held by Legacy in its computer systems.

20. The information held by Legacy at the time of the Data Breach included the unencrypted PII of Plaintiff and Class members.

21. Upon information and belief, Legacy made promises and representations to Plaintiff and Class members that the PII collected would be kept safe and confidential, the privacy

[5] https://www.legacycpas.com/about-us (last accessed March 13, 2025)

of that information would be maintained, and Legacy would delete any sensitive information after it was no longer required to maintain it.

22. Plaintiff and Class members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

23. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class members relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their PII and demand security to safeguard their PII.

24. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class members from involuntary disclosure to third parties. Defendant has a legal duty to keep Plaintiff and Class members' PII safe and confidential.

25. Defendant had obligations under the FTC Act, contract, industry standards, and representations made to Plaintiff and Class members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

26. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class members' PII. Without the required submission of PII, Defendant could not provide its services.

27. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class members' PII from disclosure.

***The Data Breach***

28. On or around April 2024, Legacy discovered an unauthorized actor gained access to and compromised its IT network "Data Breach".

29. On or about February 27, 2025, Defendant began notifying Plaintiff and Class Members of the Data Breach by sending a Notice of Security Incident letter ("Notice")[6]:

> **What Happened:** In late April 2024, Legacy learned of potentially suspicious activity related to certain data stored on our computer network. We immediately took steps to secure our environment and investigate the nature and scope of the issue with assistance from a third-party cybersecurity specialist. After receiving additional information in November 2024, the investigation determined that certain files had been taken from Legacy servers by an unauthorized actor. Therefore, Legacy conducted a comprehensive review to identify what information was impacted and the individuals to whom the information relates. Now that the investigation is complete, we are contacting all potentially impacted individuals.
>
> **What Information Was Involved:** In early February 2025, the investigation confirmed that the information on our system at the time of the incident may have included your name, and Social Security number.
>
> **What We Are Doing:** Legacy takes this event and the confidentiality, privacy, and security of information in our care very seriously. Upon becoming aware of this event, we immediately ensured the unauthorized access had been eliminated, began investigating what happened, and reported this event to federal law enforcement. Although Legacy has always taken data security and privacy very seriously, we have implemented even more stringent access controls.[7]

30. To be clear – there are numerous issues with Legacy's Data Breach, but the deficiencies in the Data Breach notification letter exacerbate the circumstances for victims of the Data Breach: (1) Legacy waited over ***ten*** months to notice Plaintiff and Class members of the Data Breach; (2) that Legacy fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the PII that Legacy continues to maintain is secure; and (3) Legacy fails to state how the breach itself occurred. All of this information is vital to victims of a data

---

[6] Exhibit A.

[7] *Id.*

breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

31. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

32. Furthermore, Defendant's refusal to notify Plaintiff and Class members of the Data Breach is in direct violation of Defendant's responsibilities under the data breach notification statute in Illinois. *See* Illinois Identity Theft Enforcement And Protection Act which requires that the disclosure notification must be made "without unreasonable delay and in each case not later than the 60th day after the date on which the person determines that the breach occurred".[8]

33. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of PII.

34. The attacker accessed and acquired files in Defendant's computer systems containing unencrypted PII of Plaintiff and Class members, including names, and Social Security numbers. Plaintiff's and Class members' PII was accessed and stolen in the Data Breach.

35. Plaintiff further believes his PII, and that of Class members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

[8] Illinois requires the notification to be made within 60 days of discovery of the breach, and "unreasonable delay" is anything that exceeds that. Defendant failed to meet this deadline by over 200 days.

***The Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' PII.***

36. As a condition of receiving third-party services from Legacy, Plaintiff and Class members were required to give their sensitive and confidential PII to Legacy.

37. Legacy retains and stores this information and derives a substantial economic benefit from the PII that it collects. But for the collection of Plaintiff's and Class members' PII, Legacy would be unable to provide its services.

38. By obtaining, collecting, and storing the PII of Plaintiff and Class members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

39. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

40. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class members.

41. Upon information and belief, Defendant made promises to Plaintiff and Class members to maintain and protect their PII, demonstrating an understanding of the importance of securing PII, including through its privacy policy.[9]

42. Defendant's negligence in safeguarding the PII of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

---

[9] *See* https://www.legacycpas.com/privacy-policy ("We promise not to sell or disclose to any outside party any of our e-mail or other mailing lists or any of the information we obtain from you. As your most trusted business partner, we recognize that we have a responsibility to protect this information.")(last accessed March 13, 2025)

***Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Entities in Possession of PII Are Particularly Suspectable to Cyber Attacks***

43. Data thieves regularly target entities like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access.

44. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities like Defendant that collect and store PII and other sensitive information, preceding the date of the Data Breach.

45. In light of recent high profile data breaches at other industry-leading companies, including, *e.g.*, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII that it collected and maintained would be targeted by cybercriminals.

46. For example, of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7%, were in the medical or healthcare industry.[10]

47. The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[11]

---

[10] 2021 Data Breach Annual Report (ITRC, Jan. 2022), https://notified.idtheftcenter.org/s/, at 6.
[11] *Id*.

48. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class members from being compromised.

49. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

50. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class members.

51. The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class members are long lasting and severe. Once PII is stolen fraudulent use of that information and damage to victims may continue for years.

52. As an entity in possession of its Plaintiff and Class members' PII, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it by Plaintiff and Class members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

***Defendant Fails to Comply with FTC Guidelines***

53. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

54. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[12]

55. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[13]

56. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

57. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

[12] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://Legacy.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed March 13, 2025).
[13] *Id.*

58. These FTC enforcement actions include actions against entities, like Defendant. *See, e.g., In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

59. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

60. Defendant failed to properly implement basic data security practices.

61. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff and Class members' PII or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C.

§ 45.

62. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the PII of its Plaintiff and Class members; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

***Defendant Owed Plaintiff and Class Members a Duty to Safeguard their PII***

63. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Class members.

64. Defendant owed a duty to Plaintiff and Class members to create and implement reasonable data security practices and procedures to protect the PII in its possession, including adequately training its employees and others who accessed PII within its computer systems on how to adequately protect PII.

65. Defendant owed a duty to Plaintiff and Class members to implement processes that would detect a compromise of PII in a timely manner.

66. Defendant owed a duty to Plaintiff and Class members to act upon data security warnings and alerts in a timely fashion.

67. Defendant owed a duty to Plaintiff and Class members to disclose in a timely and accurate manner when and how the Data Breach occurred.

68. Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

***The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft***

69. The unencrypted PII of Plaintiff and Class members will end up (if it has not already ended up) for sale on the dark web, as that is the *modus operandi* of hackers.

70. Unencrypted PII may also fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class members.

71. Simply put, unauthorized individuals can easily access the PII of Plaintiff and Class members because of the Data Breach.

72. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

73. Plaintiff's and Class members' PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class members and to profit from their misfortune.

***Loss of Time to Mitigate the Risk of Identity Theft and Fraud***

74. As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

75. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class members must monitor their financial accounts for many years to mitigate the risk of identity theft.

76. Plaintiff and Class members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

77. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[14]

78. Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[15]

79. And for those Class members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

---

[14] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed March 13, 2025).

[15] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last accessed March 13, 2025).

***Diminution of Value of PII***

80. PII is valuable property.[16] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that PII has considerable market value.

81. The PII stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach is difficult, if not impossible, to change.

82. This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[17]

83. Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[18]

---

[16] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed March 13, 2025) ("GAO Report").

[17] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed March 13, 2025).

[18] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

84. An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[19] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[20,21] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[22]

85. As a result of the Data Breach, Plaintiff's and Class members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

86. The fraudulent activity resulting from the Data Breach may not come to light for years.

87. Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

88. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to millions of individuals' detailed

---

[19] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed March 13, 2025).

[20] https://latimes.com/business/story/2019-11-05/column-data-brokers (last accessed March 13, 2025).

[21] https://datacoup.com/ (last accessed March 13, 2025).

[22] https://www.thepennyhoarder.com/make-money/nielsen-panel/#:~:text=Sign%20up%20to%20join%20the,software%20installed%20on%20your%20computer (last accessed March 13, 2025)

PII and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

89. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class members.

***The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary***

90. Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of PII involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the PII for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

91. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her PII was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

92. Consequently, Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future.

93. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor and protect Class members from the risk of identity theft resulting from Defendant's Data Breach. This is a future

cost for a minimum of five years that Plaintiff and Class members would not need to bear, but for Defendant's failure to safeguard their PII.

***Loss of the Benefit of the Bargain***

94. Furthermore, Defendant's poor data security deprived Plaintiff and Class members of the benefit of their bargain. When agreeing to pay Defendant for its third-party services, Plaintiff and other reasonable Plaintiff and Class members understood and expected that they were, in part, paying for the services and necessary data security to protect the PII when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

***Plaintiff's Experience***

95. Plaintiff receives third-party services from Defendant. To receive these services, he was required to provide his PII to Legacy.

96. Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's PII in its system.

97. Plaintiff is very careful about sharing his sensitive PII. Plaintiff stores any documents containing his PII in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

98. Plaintiff learned of the data breach after reviewing the Notice. According to the Notice, Plaintiff's PII was improperly accessed and obtained by unauthorized third parties. The PII comprised some combination of his name and Social Security number.

99. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including checking his bills and accounts to make sure they were

correct. Plaintiff has spent significant time dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

100. As a result of the Data Breach, Plaintiff fears for his personal financial security and uncertainty over what confidential information was revealed in the Data Breach. He is experiencing feelings of anxiety, sleep disruption, stress, and fear because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

101. Additionally, Plaintiff has suffered actual injury in the form of fraud, as an unauthorized individual used his confidential information to make a purchase that he did not consent to.

102. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

103. As a result of the Data Breach, Plaintiff is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

104. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

105. Plaintiff brings this suit on behalf of himself and a Class of similarly situated individuals on behalf of the following class:

> All individuals received third-party services from Legacy and whose PII was accessed and/or acquired by an unauthorized party in the Data Breach. (the "Class").

106. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

107. Plaintiff reserves the right to amend the definition of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

108. **Numerosity.** The Class members are so numerous that joinder of all members is impracticable. The exact number of members of the proposed Class is unknown to Plaintiff, but upon information and belief, is more than 100. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

109. **Commonality.** Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual Class members. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, are the following:

a. Whether and to what extent Defendant has a duty to protect the PII of Plaintiff and Class members;

b. Whether Defendant has respective duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

c. Whether Defendant has respective duties not to use the PII of Plaintiff and Class members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class members;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g. Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

110. **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of Defendants giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

111. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

112. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## CAUSES OF ACTION

### COUNT I
### Negligence
***(On behalf of Plaintiff and the Class)***

113. Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

114. Defendant requires its Plaintiff and Class members, including Plaintiff and Class members, to submit non-public PII in the ordinary course of providing its services.

115. Defendant gathered and stored the PII of Plaintiff and Class members as part of its business of soliciting its services to its Plaintiff and Class members, which solicitations and products affect commerce.

116. Plaintiff and Class members entrusted Defendant with their PII with the understanding that Defendant would safeguard their information.

117. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the PII were wrongfully disclosed.

118. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

119. Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

120. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class members. That special relationship arose because Plaintiff and Class members entrusted Defendant with their confidential PII, a necessary part of being Plaintiff and Class members of Defendant.

121. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

122. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

123. Defendant breached its duties, thus was negligent, by failing to use reasonable measures to protect Class members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class members' PII; (b) failing to adequately monitor the security of their networks and systems; and (c) allowing unauthorized access to Class members' PII.

124. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

125. It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' PII would result in injury to Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry.

126. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the PII were wrongfully disclosed.

127. Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class members, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

128. It was therefore foreseeable that the failure to adequately safeguard Class members' PII would result in one or more types of injuries to Class members.

129. Plaintiff and Class members had no ability to protect their PII that was in, and likely remains in, Defendant's possession.

130. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

131. Defendant's duty extended to protecting Plaintiff and Class members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

132. Defendant has admitted that the PII of Plaintiff and Class members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

133. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, the PII of Plaintiff and Class members would not have been compromised.

134. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The PII of Plaintiff and Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

135. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b)

remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

136. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

137. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

138. Plaintiff and Class members are entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class members.

**COUNT II**
**Negligence *Per Se***
***(On behalf of Plaintiff and the Class)***

139. Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

140. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

141. Defendant breached its duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

142. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

143. The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the statutes described herein.

144. Plaintiff and Class members were within the Class of persons the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

145. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

146. The injuries and harms suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their PII.

**COUNT III**
**Breach of Fiduciary Duty**
***(On behalf of Plaintiff and the Class)***

147. Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

148. Plaintiff and the other Class members gave Defendant their PII believing that Defendant would protect that information. Plaintiff and the other Class members would not have provided Defendant with this information had they known it would not be adequately protected.

Defendant's acceptance and storage of Plaintiff's and the other Class members' PII created a fiduciary relationship between Defendant on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of Plaintiff and Class members, which includes safeguarding and protecting Plaintiff's and the other Class members' PII.

149. Due to the nature of the relationship between Defendant and Plaintiff and the other Class members, Plaintiff and the other Class members were entirely reliant upon Defendant to ensure that their PII was adequately protected. Plaintiff and the other Class members had no way of verifying or influencing the nature and extent of Defendant's or their vendors' data security policies and practices, and Defendant was in an exclusive position to guard against the Data Breach.

150. Defendant has a fiduciary duty to act for the benefit of Plaintiff and the other Class members upon matters within the scope of their relationship. It breached that duty by contracting with companies that failed to properly protect the integrity of the systems containing Plaintiff's and the other Class members' PII, and otherwise failing to safeguard Plaintiff's and the other Class members' PII that they collected.

151. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and the other Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of

time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data breach; (vii) loss of potential value of their PII; (viii) overpayment for the services that were received without adequate data security.

## COUNT IV
**Breach of Implied Contract**
***(On behalf of Plaintiff and the Class)***

152. Plaintiff hereby repeats and realleges paragraphs 1 through 112 of this Complaint and incorporates them by reference herein.

153. Defendant offered to provide third-party services to its Plaintiff and Class members, including Plaintiff and Class members, in exchange for payment.

154. Defendant also required Plaintiff and the Class members to provide their PII to receive Defendant's third-party services.

155. In turn, Defendant impliedly promised and represented to protect Plaintiff's and Class members' PII through adequate data security measures, including through its privacy policy.

156. Plaintiff and the Class members accepted Defendant's offer by providing PII to Defendant in exchange for receiving Defendant's services, and then by paying for and receiving the same.

157. Plaintiff and Class members would not have entrusted their PII to Defendant but for the above-described agreement with Defendant.

158. Defendant materially breached its agreement(s) with Plaintiff and Class members by failing to safeguard such PII, violating industry standards necessarily incorporated in the agreement.

159. Plaintiff and Class members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

160. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

161. Defendant's conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract.

162. The losses and damages Plaintiff and Class members sustained as described herein were the direct and proximate result of Defendant's breach of the implied contracts with them, including breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class members, requests judgment against Defendant and that the Court grants the following:

A. For an order certifying the Class, as defined herein, and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

iii. requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

iv. requiring Defendant to implement and maintain a comprehensive information security program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class members;

v. prohibiting Defendant from maintaining the PII of Plaintiff and Class members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and security checks;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves; and

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct an attestation on an annual basis to evaluate Defendant's

compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment.

D. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March 13, 2025.

Respectfully submitted,

By: *<u>/s/Andrew Shamis</u>*
Andrew J. Shamis
Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com
lloginov@shamisgentile.com

*Attorney for Plaintiff and the Putative Class*